The call is announced and the times will be as allotted to counsel. The first case today is number 181391, United States v. Gabrielle Rodriguez-Pacheco. Good morning, Your Honors. Lauren Rosen on behalf of Mr. Rodriguez-Pacheco. Chief Judge Howard, may I reserve three minutes for rebuttal? Yes. Thank you, Your Honor. Without an arrest warrant or a search warrant, 12 armed officers went to Mr. Rodriguez's mother's home in the middle of the night. Their warrantless entry into the home was not supported by a genuine exigency or valid consent. And the seizure of electronics inside the home was illegal as the Plain View Doctrine was inapplicable. Counsel, could you give us a little information about what this special rule is for police officers in domestic violence situations? Your Honor, are you referring to the internal police procedure of seizing firearms? If that's what it is, yes. Your Honor, at the suppression hearing and pursuant to motions filed, there was a discussion of an internal PRPD directive, police of Puerto Rico directive, that stated when an officer is the suspect of a domestic violence charge, the sergeant or an agent on duty must first assess the danger and then second, seize the firearm. What is the procedure for seizing the firearm? Does the officer understand that someone can come into their home and have the weapon seized? Your Honor, the record is absolutely devoid of any further information about that procedure or any information about how that procedure should be carried out. Officer Murillo did testify that he understood he had to go find the officer and seize the firearm. But beyond that, there is no further regulations describing under what circumstances or how, when, or where they should seize the firearm. And there was no testimony provided outlining a specific procedure to that extent. So is it any kind of domestic violence allegation? In other words, the allegations here involved threats to disclose intimate photographs, not threats to kill. And so is whatever this procedure is in place, regardless of the nature of the domestic violence situation? Your Honor, there's nothing on the record that answers that question. And for exactly that reason, we would submit that there were no exigent circumstances to enter the home in this case, because officers were investigating threats of possible release of sexually explicit videos. And devoid from those text messages and devoid from the record is any indication that before officers entered the home, they had knowledge that Mr. Rodriguez was physically violent, that he had threatened physical violence, that he had all used the firearm in connection to the crime they were investigating, or that he had ever used the firearm in an inappropriate manner. And this is what distinguishes Mr. Rodriguez's case from every case relied on by the government and the court below. Courts have found that a firearm creates an exigent circumstance, but only when there's an imminent threat to the officers on scene or people nearby. Well, let's see if we can break this down. So they're responding to it. They certainly had probable cause to go and arrest him, didn't they? Your Honor, we have not objected to the PC on appeal. So, yes. Okay. So they had probable cause to go there and arrest him. But then once they arrest him, his officer authorized to carry a firearm. It's a domestic dispute. I think many officers would say there's probably more danger in responding to a domestic dispute than going even to a drug point. And so they want to account for the gun. Why can't they account for the gun, particularly when there are other people in the house? Who knows what their relationship is to the domestic dispute? They would just leave with the officer and leave the firearm, a police department firearm, unaccounted for. Wouldn't that be a problem? Not in this case, Your Honor. To begin with, Officer Murillo, the sole officer investigating this complaint, was well aware that the complaining witness was not in that home. He had met with her earlier that day. Second, officers knew who was in the home, and that was Mr. Rodriguez's family. Third, there are some cases relied on on the court below that did involve domestic violence, cases that were ongoing. But in those cases, there was an active domestic violence situation in the home where a weapon was being used. What we don't have here is any indication that the weapon was related to the domestic violence allegation, because it wasn't. Or that the weapon in the home was creating the type of imminent threat that necessitated entry into the home. I think what you're implicitly saying is that the same rule that we would apply to a civilian who's being arrested with respect to a gun, that as a matter of constitutional law, a police department is prohibited from having a different procedure when it comes to accounting for the firearms that it provides to its officers. And why would that be? Why could not a police department have a uniform rule that any time you arrest a police officer for domestic violence, you always account for the firearm? Your Honor, on this record, I guess what – is the court asking whether there could be a valid administrative search pursuant to a police procedure any time an officer is arrested outside of his home and there's a firearm inside? Yes, why not? Well, Your Honor, we haven't reached that question in this case because there is no full administrative procedure on the record that the court can consider whether that procedure in itself would be constitutional. We have a rule, I thought, as far as I understand that there's a procedure in place that says account for the gun. Right. What we have in place is a general directive to seize the firearm. And we didn't brief this issue, and I'd be happy to submit supplemental briefing, but it is my understanding that pursuant to a constitutional administrative search, the court would have to consider a number of factors, including how, when, and where they are allowed to enter the home, whether there's a substantial government interest versus the intrusion of privacy. And there is no record below that illuminates those factors. So we would first submit that this record is devoid of the facts needed to consider whether there is a valid administrative search. And second, even if an administrative search might be reasonable in some circumstances, I would posit that a warrantless entry into the home, the home that is the most protected place by the Fourth Amendment, would likely be unreasonable. I think you said it was his family members who were in the home? Yes, Your Honor. And this was a domestic dispute between him and another person? Your Honor, the police were absolutely investigating an allegation that he was threatening to release sexually explicit videos of a woman who was not in the home. Sure, but so what you're saying is they had no choice but to leave the gun where his family members, in the wake of arresting him, would have unrestricted access to a police department firearm? No, no, they had a number of choices. They could have secured the scene and gotten a warrant. There were 12 officers on scene. Only the outside of the scene you would say they could secure? Correct, Your Honor. So they couldn't do anything to restrict access to the police department firearm until they got a warrant there? They could have restricted the family's access. They also, it's important to note, Agent Murillo met with a district attorney. So stay with, how would they have restricted the family access? In other words, made them all come out of the house and wait? They could have done that, Your Honor. And you would see that as less of a constitutional violation than them saying to him, we're going to walk in with you to get the gun and come out. Instead, they're going to take all the family members out, make them stand outside the house, and that's less of an intrusion? What is an intrusion? What is the greatest intrusion? I couldn't say explicitly. I can say for sure that officers didn't have exigent circumstances to enter that home that night. They had a lot of other options available to them. They could have sought the consent of other parties who were present there. They could have sought a warrant earlier in the day because Officer Murillo met with a district attorney earlier in the day before he went to the home. They also could have. Wait, what was the time frame? Your Honor, I don't have the exact hour, but I believe the record is clear that after Officer Murillo was off duty, a friend of his wife came to his home to report these complaints. After he looked over the text messages, Officer Murillo went and met with a state district attorney. After meeting with the state district attorney later that night at midnight, he went to Mr. Rodriguez's home. So turning back to exigency, for the exigency exception to apply, an officer has to have a reasonable perception of danger of the urgency and magnitude that necessitates the warrantless entry into the home. And if the court looks at Officer Murillo's own actions that day, they belie any notion that there was an urgent need to enter the home. To begin with, the district court below found that Mr. Rodriguez was under arrest from the moment he stepped outside his house. Officer Murillo and Mr. Rodriguez first spoke in the driveway of the home. At no time during that conversation was Mr. Rodriguez handcuffed. At no time during that conversation was his liberty at all restricted. Officer Murillo allowed Mr. Rodriguez to walk back into the home in front of him and actually allowed Mr. Rodriguez to go and pick up the gun and place it on the bed. And that's Officer Murillo's testimony. So if that weapon created such an imminent threat that it was necessary to breach the sanctity of the home, he wouldn't have allowed Mr. Rodriguez to go get the gun himself. And as the Sixth Circuit held in Bates, evidence that firearms are within a residence is not in itself sufficient to create an exigency. And in that case, the court held that in violation of the knock-on announcement rule, because officers believed there was an armed drug dealer inside the house, required suppression of evidence found by an otherwise lawful search warrant. And that's because there must be proof that a suspect possesses a weapon and was likely to use the weapon or become violent. And the record is devoid of facts that would substantiate that Mr. Rodriguez was at all going to become violent or use the weapon in an inappropriate manner. The record also fails to support a finding that the entry was consensual. And to be clear, there are no findings of fact on the issue of consent. Competing testimony was presented at the evidentiary hearing, and the court below explicitly declined to make a credibility determination. So there are no findings of fact on the record that could substantiate a finding that there was a consensual entry into the home. So without valid consent... Is there anything on the record suggesting that the defendant declined to let the officer into the home? Mr. Rodriguez's testimony. He took the stand at the suppression hearing. May I finish my response? Yes, of course. And stated that he provided no consent to enter the home. That wasn't my question. My question was, is there anything in the record that suggests that he declined to allow him into the home? There's nothing that he shut the door or said no, but obviously it is the government's burden to prove valid consent by a preponderance of the evidence, and Mr. Rodriguez took the stand and said that he didn't consent. So what do we know? About consent? We know that there was a conversation outside the home. The only two witnesses to that conversation were Officer Murillo and Mr. Rodriguez. We know that the district court declined to make a credibility determination and declined to make a decision as to whether there was valid consent in this case. Isn't it undisputed that Rodriguez offered to go and get the weapon, and the officer said, no, I'll go with you, and then they went? There were no facts that contested that statement from Officer Murillo. That is correct. And it is true that something was said outside the home that had to do with the weapon, obviously, because that's how officers end up in the home. However, there is no clear finding of fact on consent, and the statement made by Officer Murillo saying, no, I'll go get the weapon, that is not requesting consent or garnering consent. That is a statement that I'm going to enter your home. Thank you. Good morning, Your Honors. May it please the Court, AUSA Francisco Esmeralda Martinez for the government. Your Honors, the electronics in this case were properly seized under the Plain View Doctrine. Agent Murillo had reached a vantage point from which they were lawfully visible and had the right to access them. I'm sorry, can we talk about the entry first? The entry? Yes, please. Yes. I'm trying to, because the district court expressly declined to rule on the issue of consent because the district court said that the exigent circumstance exception justified the entry. And so I'm trying to figure out what was the exigent circumstance that would get around them obtaining a warrant. Your Honors, the exigent circumstances in this particular case revolved around the fact that when they went to the home to detain and disarm. Right, but why couldn't they get a warrant to enter the home before they went, given the lapse of time between when they had a discussion with the solicitor and the entry into the home at midnight? Your Honor, the specific time frame isn't that clear from the record. However, we do know that there were various steps before they were able to even locate Rodriguez or where he was. For example, Agent Murillo first saw the text when the victim went to his home because he was his wife's co-worker. It doesn't sound like there was even any consideration for getting a warrant given this police procedure. Your Honors, yes, the testimony from Mr. Murillo was that he understood that it wasn't necessary because of the procedure. All right, so how does the procedure just, is constitutionally justified? Your Honors, as Judge Cayetano was pointing out, this was a police department firearm property which needed to be accounted for. And the procedures, which have largely not been challenged, do state that this is the proper procedure, that when there's a domestic violence complaint against a fellow officer, the officers on duty must disarm him. So if he was arrested, say, two miles from his home without the weapon, are you saying that this procedure would have allowed them to enter his home even after he was under arrest to seize the weapon? I'm trying to figure out what the boundaries are of this police power. That is certainly a much more difficult scenario to gauge on. That doesn't mean you shouldn't answer it. I would suggest that they would still, in this particular case where if all other things remaining equal, that he did consent to going back to the home and getting the firearm, then yes, because that was the case here. There was a consent. That's not the question. Suppose he was arrested two miles away from his home and did not consent. Is it your position that police would have been justified in entering his home without a warrant? Your Honors, in that case, I would believe that they would have to get a warrant, yes. What is different then? Whether it's two miles, 100 miles, or 10 feet, if they've got him totally in control and he doesn't have the gun and they're outside the house, then I'm very interested. You can see two miles away, they couldn't go and get the gun, but two feet, they could go into the house and get it. What's the difference? Well, Your Honor, I would, like I said, it's a much more difficult scenario. Why? You said it's difficult, but I'm not seeing why it's different. And that's a completely understandable position. And if that is the case, then, well, yes, I would have to retract it. It would probably be reasonable under these protocols to go get the firearm with the defendant having been arrested. However, getting back to the specific facts of this case, when the officers went to the house, Rodriguez came out and he said, when Agent Murillo said that I asked him where his firearm was, he said it was inside. I would go get it. I'll go get it. Wait here. At that moment, Agent Murillo said, no, no, no, I will go with you. And he said, according to Agent Murillo, okay. And they went in together. This was a consensual entry, Your Honors. Well, but the district court didn't make any findings of consent. Didn't make any explicit findings, Your Honor. But it specifically said they weren't making a finding of consent because they were relying on the exigent circumstances document. Yes, and two points on that, Your Honor. First, even though he didn't make a finding on that, he did state that Agent Murillo and Sandero's testimony were otherwise credible. And second of all, the only evidence that this was not a consensual entry was Rodriguez's testimony, which was two words in response to the defense attorney's question of whether or not he had given any kind of consent. He said, negative, no. That is the extent of the evidence showing that this was maybe a non-consensual entry. That's one word more than he needed. That's pretty succinct, isn't it? Well, Your Honors, when we look at the record as a whole, the surrounding circumstances, the interaction between the officers in this case, suggest that this wasn't a non-consensual search. This was a situation where the defense concedes that he was cooperative, that he wasn't handcuffed when they arrived. Didn't you argue below that there was consent? Yes. And if the court had agreed with you, it just wiped out a whole bunch of tricky issues, made a very easy case for the judge below. Yes. And the judge didn't find consent. And you want us to then say, silently, somehow he did, and yet he wandered off into this thicket of these other issues? Well, Your Honor, the government isn't saying that he did. We're saying that the evidence — Well, did he or did he not find consent? No, he didn't reach that question. So how could we possibly affirm on the grounds of consent? We didn't see the witnesses testify. We didn't decide whether no negative was said or not said. Your Honor, the government's position is that this court can affirm on any grounds reasonably. But not credit. We can't make a credibility finding. Your Honor, the government would posit that there is no need for credibility findings because there is no alternative theory of how the agents entered the home. There is. He said no. He said no, but he doesn't explain how — How does no need an explanation? Well, common sense would say that in such a scenario, there would at least have been some kind of discussion or — He surrounded 12 officers with guns, and you're saying that no was — more was needed? Isn't it just the other way? You actually need consent. If he'd been silent and there had been zero words, there'd be no consent. Not necessarily, Your Honor. It could be a nonverbal consent. Well, I mean, he didn't shake his head or whatever. But the burden — the status quo, the null set here is no consent. The question is, did the police obtain consent? And if the evidence in the record is that when they said they were going to go in, he said no negative, and we don't have a finding by the magistrate or the judge that that wasn't said, you're kind of — I don't see how you can get us to then say, oh, well, he didn't say it. So we left it at the exigent circumstance argument. Well, the government's position is that the surrounding circumstances would allow this court to conclude that there was consent. But in any case, Your Honor, back to the exigent — When I first started reviewing this, I was trying to figure out if there is just a blanket policy that an officer who becomes a police officer accepts as part of the condition of employment, although you aren't arguing that. I'm sorry, Your Honor, the last part? I said although you're not arguing that. In other words, I mean, I think that if there is an administrative procedure that is imposed upon police officers as a condition of their employment, then, I mean, I think that could be an argument that you're giving consent in advance, but you're not arguing that. Sure, Your Honor, but we have stated that in the probable cause context that one particularly compelling factor that this court considers is the fact that this was a police officer. He knows his rights. He knows the procedures with the police department. But he doesn't give up his constitutional rights absent some waiver of them, does he? Sure, Your Honor, however — I mean, sure he does? Sorry? Sure he does? Sure he doesn't. He doesn't? Okay. He doesn't. Whether or not there was like a specific waiver as to this, I'm not sure if there was a signed waiver, but however, the police department does provide its officers training on these matters, and I believe that there is — Is that in the record in this case? I believe Ellen Murillo testified that they receive monthly trainings and whatnot on various different matters. On the seizing of the weapon? It seems to me your best argument in this case, and in fact your position would seem to hinge upon this procedure being a uniform procedure to account for the department's weapons whenever there's a domestic dispute. The record is pretty skinny on this procedure. As I understand it, there's no document in the record that tells us exactly what the procedure is? What specific procedure is followed? No, Your Honor. What is on the record is the rule itself that says that once a complaint has been filed against a police officer on domestic violence grounds, that officer will need to be disarmed. That's why the wording is very particular, because disarmed — he was disarmed. The two-mile-away arrest, he's disarmed. We're not talking specifically about disarming here. We're talking about accounting for the gun even if he isn't armed. And now your recitation of the procedure has twice used the word disarmed, so I think we're going to have to assume that's what the procedure says because no one put it in the record for us. And then you've got the problem of, well, wasn't he disarmed already when they had him in custody outside the door? Yes, Your Honor. I believe the rule does use the word disarmed, but we can make the inference that the purpose of that is precisely not only to disarm this officer, but also for the department to keep account of its weapons, of government property. But on that, we don't have any evidence. No, Your Honors. There is no specific evidence as to that particular case, but, however, it is a logical conclusion that that is one of the main purposes of this rule or guideline. So setting aside your alternative argument of consent for seconds, sticking with exigent circumstances, is it the case that the police officers could have, at midnight, gone to the house, knocked on the door, greeted at the door, said they're here to arrest and to seize a weapon, and get told, no, you can't enter? Could they just go ahead and go in and get the gun at that point? No, Your Honor. I believe they would have to get a warrant at that particular place because, from that fact, I'm guessing there is no arrest at that point. They were just being denied entry and they would just leave and get their corresponding warrants. Suppose they arrested him when he said no. Could they have gone in? Yes, Your Honor. So they arrive at the door. Let's say he greets them at the door. They place them in handcuffs. They don't say anything. They just place them in handcuffs, take them off the porch. Then they can go in and look for the gun? Yes, Your Honor, because at that point, they know that there is, for a fact, a gun in the house that is government property and that there are other people living in that house. There are other people that could have access to that gun. That is what distinguishes this case from other cases where a defendant is arrested outside and there's no evidence of other people being inside the home. In those cases that have been found, that a warrant is necessary. Here, however, it is clear that at least three other people lived in that home. You cite one case for this proposition in your brief. I think it's Lopez. Yes, Your Honor. Is there any other case anywhere that you would urge us to rely upon if we were to accept that argument that they have a right to go in because of this procedure to account for the gun? Off the top of my head, Your Honor, I cannot think of one, but I could certainly do additional research after our argument and submit a Rule 28J if such a case were to arise. If we should rule against you on exigent circumstances and if we should conclude that there was no finding on consent, is the proper result here a remand for a finding on consent or is the case over? I would suggest a remand, Your Honor. Why? Why is that so? Because it was left unresolved. There was no finality to that finding, and so we would suggest that the correct procedure would be to allow the district court to reach that issue, which it believed it did not have to in light of its reliance on the exigent circumstances. I have forgotten now. Did the government rely on consent in front of the magistrate judge? Yes, Your Honor. Okay. Yes. Thank you. Can I just ask one more thing? Yes, of course. I'm sorry. Because we completely cut off your other argument, could you just briefly give us your argument as to how the police were justified, not necessarily in seizing the computer, but everything else that it seized? I don't mean the gun. I mean the other electronics. Well, Your Honor, the findings were that all items were on top of the bed, and in fact it is. But they want the information contained in the items, not the items themselves. So assuming that there was a reasonable basis for saying that the computer sufficiently fit the description that officers saw on the phone, what's the justification for seizing the other electronics? Well, Your Honor, first of all, the threats were sent via text messages. So that covers the set of a phone, which was in his bedroom on top of his bed, giving a fair probability that this was indeed his cell phone. Moreover, the camera, this is an issue. This was a complaint where the victim alleged that he was threatening to disseminate photos and videos of her. So obviously a camera would be able to produce such items. And moreover, like technology today, once you take it with the camera, it can be uploaded to your computer. Another point, Your Honor, is that these items were plugged in with their chargers, further showing that they were not there just temporarily or that they were someone else's while in the room, but rather that they were his in his room where he stored his things just like his gun and that they were there because they were his. If Your Honor would have no further questions. May it please the Court. In regards to the sole case relied on by the government, U.S. v. Lopez, it's important to note that that case involved a threat of a person pointing a sawed-off shotgun at another individual. Officers were responding to a 911 call for service. When they got to the scene, the victim was on scene, provided a description, and officers saw the defendant who matched the description on scene. That person then disregarded officers' commands to stop and ran to the home. In that case, they found that the firearm created an exigent circumstance, and the First Circuit called that case a close margin. And compared to the facts of our case, I would submit that there is a vast difference because there was no threat of violence, there was no allegation of physical violence, and there was a cooperative person on scene. Turning to the consent, consent was the sole theory advanced by the government at the suppression hearing. In fact, in arguments at the close of the suppression hearing, they stated if there was no valid consent, there was no legal entry into the home. So the easiest decision for the magistrate or the district court judge to make was that there had been valid consent, and the court declined to do that. And so with competing testimony on this record, we would submit that this court cannot find consent and cannot uphold the entry into the home on consent. I'm sorry, how do you answer Chief Judge Howard's question? Could you repeat the question, Your Honor? What do we do if we decide that there's no finding of consent and there's no exigent? Do we send it back remanded for further either fact-finding or decision on the issue of consent? Your Honor, I would submit that the record is clear that the easiest choice for the court below was that there was consent, and the court declined to make that finding. So I think the record speaks for itself. Did it expressly decline to make that finding, or did it just jump to exigent circumstances? Your Honor, there is actually, and I can quote the language from the suppression order, in footnote 9 of the magistrate judge's R&R, his exact language is, as the court does not reach the issue of consent, and then in the analysis of exigent circumstances, the court states consent is not relevant because there is exigent circumstances. So at the very least, yes, this court would have to remand for an evidentiary hearing on consent, but we would submit that when the government's sole theory of injury was consent, and that was the highly contested issue at the evidentiary hearing, and the court declined to make a ruling on consent, the record speaks for itself. But it didn't say because it couldn't. It said because it's going to go off on this other basis. So why is the government prohibited from arguing now that it's entitled to at least a determination on consent if the district court was wrong on the basis that it did decide? May I respond, Your Honor? Of course. I don't think the government's prohibited, but I do believe the record is clear that should, if consent had been blatantly obvious, I'm sorry, and the reasonable interpretation of the testimony and the credibility of the witnesses before the court below, they would have so ruled. Thank you. I have just one more question. The complaining witness in this case approached the police officer friend at his home. Is there anything in the record as to what time that occurred? Your Honor, I am not aware of that, no. All I can say to the court is that the complaining witness went to the home at some point when Officer Murillo was off duty. Then after that, he went to meet with the state court prosecutor, and then after that, he traveled from Ponce to Yalco and then went to Mr. Rodriguez's home. But the exact timeline is unknown. Your Honor, any information about the lapse of time between any of those events? In my memory, no, Your Honor. If the record says otherwise, I can submit further information. Because exigency suggests there's no choice. Correct. It would seem that if enough time passed that would have allowed them to get a warrant, then I'm trying to figure out how exigency comes into play. Well, absolutely, Your Honor. I mean, the record is clear that there was a meeting with a state court prosecutor, a person who absolutely had the ability to seek a warrant. But if the meeting was at 7 o'clock at night, being a state court judge, cops would come over all the time. It's midnight, 2 o'clock in the morning. But I'm just trying to figure out, was it 7, was it 3 o'clock in the afternoon, what time was it? I don't know. I'm sorry, Your Honor, I can't provide that information. Okay. Thank you. Thank you both.